ENTERED
AUG 2 8 2003
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk



FILED
AUG 2 7 2003
CLERK U.S BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE<br><br>THELMA V. SPIRTOS<br><br>Debtor. | Chapter 7<br><br>Case No. LA 84-13757 AA<br><br>MEMORANDUM OF DECISION AND ORDER REGARDING DEBTOR'S MOTION TO DISQUALIFY HON. ALAN AHART |

A hearing on the "Motion to Disqualify Hon. Alan Ahart, U.S. Bankruptcy Judge" ("Motion") filed on behalf of the debtor, Thelma V. Spirtos ("Debtor"), was held before this court on February 18, 2003[1]. Jon Eardley, Esq. appeared on behalf of Debtor. No other appearances were made. At the hearing, Mr. Eardley requested, and the court granted, permission to file a post-hearing supplemental brief in support of the Motion. Thereafter, Mr. Eardley requested, and the court granted, an extension of time to file the supplemental brief. The court has reviewed the record presented in support of the Motion and renders this memorandum of decision and order.

## BACKGROUND

Debtor filed this case under Chapter 11 on June 28, 1984. It was subsequently converted

---

[1] Judge Ahart declined to hear the Motion and, therefore, it was randomly assigned to Judge Erithe A. Smith.

to Chapter 7 on July 16, 2001. Debtor's ex-husband, Basil Spirtos, now deceased, filed a separate bankruptcy petition under Chapter 11 on May 28, 1987 (Case no. LA 87-10752 AA). His case converted to Chapter 7 on February 17, 1989. Judge Ahart presides over both cases.

During the past several years, Judge Ahart has rendered a number of decisions both in the instant case and in the Basil Spirtos case. In Debtor's view, the decisions have favored the estate of Basil Spirtos to the detriment of Debtor. Stated otherwise, Debtor believes Judge Ahart is biased against her and members of her family and that his decisions reflect this bias. The tension appears to stem from the interest of Debtor and her daughter, Michelle Spirtos, in recovering spousal and child support arrearages from the Basil Spirtos estate, and the interest of a single creditor of Debtor to recover payment from Debtor's estate.

## DEBTOR'S ARGUMENTS

Debtor's request for disqualification is based upon the following grounds:

1. Judge Ahart acted inappropriately towards Mr. Eardley and Ms. Spirtos at a hearing held on April 3, 2002.

2. At the April 3, 2002 hearing, Ms. Spirtos made prejudicial statements to Judge Ahart which warrant his disqualification.

3. Judge Ahart's concurrent assignment to this case and Basil Spirtos' case has created substantial bias against Debtor and this bias is reflected by statements made at the April 3, 2002 hearing, as well as by decisions made throughout the history of the case, including Judge Ahart's refusal to dismiss this bankruptcy case.

4. A creditor has filed a lawsuit against the Chapter 7 trustee in the Basil Spirtos bankruptcy and Judge Ahart will likely be called as witness in the matter.

5. Judge Ahart has continued to render decisions in Debtor's case after the filing of the Motion.

The facts underlying the various assertions are briefly described below.

2

***The April 3, 2002 Hearing***

On April 3, 2002, a hearing was held in this case before Judge Ahart on the motions of Debtor's sole creditor, Irene Moreno ("Moreno"), for a determination that money payable to Debtor from the estate of Basil Spirtos is property of Debtor's estate ("Distribution Motion") and for relief from the automatic stay ("RFS Motion"). Debtor opposed the Distribution Motion on the ground that the money is an asset that was acquired during the pendency of her Chapter 11 and, therefore, did not become not property of Debtor's Chapter 7 estate upon conversion. Further, Debtor argued, the funds constitute payment for back child and spousal support that should be turned over to Debtor and Ms. Spirtos.[2] During the course of the hearing, the following events occurred:

1. Judge Ahart, after denying as untimely Mr. Eardley's oral request for judicial notice, commented "I know I operate differently than you do, which is to say I do things ahead of time, sorry to say." (Transcript of Hearing, page 15, lines 7-9).[3]

2. Ms. Spirtos, who was seated next to Mr. Eardley, occasionally made comments to Mr. Eardley that could be heard from the bench. On one occasion, the following exchange occurred:

    The Court:      Miss, I don't know who you are, but I'm going to ask you to be quiet and please sit down.

    [Ms. Spirtos]:  Okay. I'm actually - -

    Mr. Eardley:    She's with my office.

    The Court:      Well, that's fine, but I want you to be quiet while we're

---

[2] Ms. Spirtos, the spouse of Mr. Eardley, is a graduate of the University of Virginia School of Law and has apparently assisted Mr. Eardly in the case over the years and worked on various appeals involving the case. She is not a member of the California State Bar and has not appeared as an attorney of record. (Motion, page 3, lines 12-22); (Declaration of Michelle Spirtos, page 10, lines 8-21)

[3] In addition to reviewing the written transcript, this court also listened to an audiotape of the entire April 3, 2002 hearing.

3

|   |   |   |
|---|---|---|
| | | having this colloquy in court. |
| | [Ms. Spirtos]: | Okay |
| | The Court: | If you'd like a recess to talk to your counsel, I'll be willing to entertain that. |
| | [Ms. Spirtos]: | No. Actually I work on the case, but I'll be quiet. |

(Transcript of Hearing, page 8, lines 11-22).

    3.    Judge Ahart announced his decision to grant the motion. During the course of setting forth his reasons for doing so, he was interrupted by further chatter by Ms. Spirtos and again asked for silence. This time, Ms. Spirtos responded by verbally challenging Judge Ahart's judicial competency[4].

---

[4] As Debtor has raised Ms. Spirtos' statements to Judge Ahart as a substantive basis for his disqualification, the entirety of the exchange is set forth below:

| | |
|---|---|
| [Ms. Spirtos]: | That's it, then. |
| The Court: | Number four, the monies – Ma'am, I'm going to ask you to be quiet. I've repeatedly asked you to be quiet before. If you wish to comment, you can do so outside. |
| [Ms. Spirtos]: | You know what? I'm – |
| The Court: | Do I make myself clear, ma'am? |
| [Ms. Spirtos]: | – in the Ninth Circuit. Yes, you are, actually. |
| The Court: | Thank you. |
| [Ms. Spirtos]: | And I'm also the one that argued these cases, and you're just a disgrace of a judge. It's really pathetic. In fact, at the University of Virginia School of Law, your whole life, my whole life has been marred by your stupid legal decisions, and you know what? I've been lobbying to get you removed, and I hope, after you 14 [sic] tenure, you're out of here. Okay? Because you are a mess. You don't make decisions based on the law. You ruin people's lives. You're on a power trip, and you really should be removed. I'm surprised Al-Qaeda hasn't come to get you, and that's my First Amendment right. You're a |

4

4. At the commencement of the hearing on the RFS Motion, Judge Ahart started by apologizing to Mr. Eardley for the earlier comment regarding the tardiness of his request for judicial notice. Judge Ahart stated the remark "should not have been made" and that "[a]ctually, it was well-founded, I think, but I nevertheless regret it regarding you, and I apologize for that." (Transcript of Hearing, page 18, lines 8-11).

In Debtor's view, Judge Ahart unfairly targeted and antagonized both Mr. Eardley and Ms. Spirtos throughout the hearing. Further, Debtor found Judge Ahart's comments to Mr. Eardley to be biased and his apology insincere.

***Decisions Made During the Pendency of the Cases***

Debtor maintains Judge Ahart is unable to distinguish Debtor's bankruptcy case from that of Basil Spirtos[5]. Specifically, Debtor states:

> ... [D]ebtor faces the untenable challenge of distinguishing her case from the facts and personalities associated with the bankruptcy estate of her late ex-husband, whose failure to honor his Marital Settlement Agreement with the debtor after 30 years of marriage is the sole cause for debtor finding herself in the confines of federal bankruptcy court in the first place. Judge Ahart's open dislike remains documented throughout the numerous transcripts generated over the years

disgrace of a judge, how corrupt the federal government is. You're pathetic.

The Court: Number four, the monies have already been paid by Basil's estate to Thelma's estate.

(Transcript of Hearing, page 16, lines 5-25 and page 17, lines 1-4)

[5] In this regard, Debtor refers the court to Judge Ahart's statement at the April 3, 2002 hearing that the sixth reason for granting the Distribution Motion was "simply out of the interest of justice ... given the history of these cases."

5

concerning the bankruptcy estate of Basil N. Spirtos. (Motion, page 6, lines 22-28 and page 7, line 1).

The only transcript submitted in support of the Motion is the one from the April 3, 2002 hearing. At the hearing on the Motion, counsel suggested this court review the transcript of all hearings going back several years. However, no formal request for judicial notice of any prior proceedings was presented by Debtor. In her declaration in support of the Motion, Ms. Spirtos Spirtos maintains that Judge Ahart's inability to distinguish between the cases is documented in the appellate history of the two cases, but cites no specific examples. (Declaration of Michelle Spirtos, page 11, lines 6-21).

### The Judge as a Witness in the Basil Spirtos Bankruptcy

Moreno has commenced an adversary proceeding in the Basil Spirtos bankruptcy case against the Chapter 7 trustee and his counsel for negligence and breach of fiduciary duty based upon the alleged failure of the trustee to properly enforce the terms of a court-approved settlement agreement between the trustee and Basil Spirtos. Debtor believes Judge Ahart may be called as a witness in the adversary proceeding..

### The Judge's Continued Administration of the Case Pending a Ruling on the Disqualification Motion

Debtor asserts that Judge Ahart's continued administration of the case (e.g., signing orders and presiding over hearings) pending a ruling on the Motion constitutes further evidence of his bias against her. (See, Additional Evidence Submitted in Support of Disqualification of Hon. Alan Ahart, page 2)

## DISCUSSION

Judicial impartiality is the is the hallmark of the American system of justice. Accordingly, a request for disqualification of a judge on the basis of impartiality or bias is a serious matter that is not to be considered lightly.

6

### *Standard for Disqualification Under 28 U.S.C. § 455*

The Motion is properly presented pursuant to 28 U.S.C. § 455, made applicable to bankruptcy cases by Rule 5004(a) of the Federal Rules of Bankruptcy Procedure[6].

Section 455 provides in relevant part as follows:

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning a proceeding.

The standard for disqualification of a judge under § 455(a) is an objective one, i.e., whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *Kulas v. Flores*, 255 F.3d 780, 787 (9th Cir. 2001). Notably, the critical inquiry is not the actual existence of bias or prejudice, but its appearance to a reasonable, well-informed person. As the Seventh Circuit has so aptly observed:

> An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person .... Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. A thoughtful observer understands that putting

---

[6] Rule 5004(a) provides:

Disqualification of Judge. A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.

7

disqualification in the hands of a party, whose real fear may be that the judge will *apply* rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

*Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996) (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)).

Disqualification on the basis of partiality or bias typically arises when the judge either forms an opinion about a party from an extrajudicial source or, during the course of the judicial proceedings, forms a deep-seated favoritism or antagonism that would make fair judgment appear impossible. *Liteky v. United States*, 510 U.S. at 555.

A judge is presumed to be qualified to hear a matter and the burden is upon the moving party to prove otherwise. *In re Hutter*, 221 B.R. 632, 636 (Bankr. D.Conn. 1998); *In re Maurice*, 167 B.R. 114, 121 (Bankr. N.D.Ill. 1994). Stated otherwise, a party seeking recusal has the burden of producing facts which would raise reasonable doubt as to the impartiality of the judge. *In re Betts*, 146 B.R. 1016, 1020 (Bankr.N.D.Ill. 1992).

Generally speaking, a judge is afforded fairly wide latitude in interacting with attorneys, witnesses and other parties during the course of proceedings in the courtroom. A judge is expected to effectively manage the flow of the proceedings, maintain proper decorum, and treat parties with respect. A judge is not, however, required to be perfect or superhuman. Indeed, the right of judges to exhibit ordinary human emotions in the courtroom without being cast as biased or prejudiced is recognized by the Supreme Court in *Liteky*:

> *Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

8

510 U.S. at 555-556 (emphasis not added).

A number of circuit courts have sung from the same chorus book. *See United States v. Sibla*, 624 F.2d 864, 869 (9th Cir. 1980) ("Antipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a 'party'"); *In re National Union Fire Ins.*, 839 F.2d 1226, 1232 (7th Cir. 1988) ("An appearance of partiality against a party cannot be presumed from a rancorous relationship with the attorneys for that party"); *Panzardi-Alvarez v. United States*, 879 F.2d 975, 984 (1st. Cir. 1989) ("As a general rule, bias against a party must be shown and it is insufficient to rely on 'clashes between court and counsel' as the basis for a disqualification motion").

### The Judge's Conduct at the April 3, 2002 Hearing

In reviewing the record, this court finds nothing peculiar or abusive about Judge Ahart's interactions with Mr. Eardley during the April 3 hearing. His remarks expressing dissatisfaction with Mr. Eardley's last-minute request for judicial notice (even without the subsequent apology) clearly fall within the realm of reasonable judicial behavior and do not support a finding of personal bias or prejudice under § 455.

Judge Ahart's comments to Ms. Spirtos are even less indicative of partiality or bias. On at least two occasions, Ms. Spirtos spoke loud enough to be heard from the bench.[7] On the first request for silence, she calmly acquiesced. On the second request, however, she responded by launching into a highly emotional verbal attack. Judge Ahart allowed Ms. Spirtos to proceed uninterrupted and thereafter made no comments regarding the outburst. Although she may have been simply venting her frustration over the direction of the hearing (and, perhaps, the case in general), her behavior was clearly inappropriate. Contrary to the assertions of both Mr. Eardley and Ms. Spirtos in their respective declarations, Judge Ahart did not verbally provoke or attack Ms. Spirtos, nor did he engage in conduct that could be reasonably viewed as antagonistic or

---

[7] As indicated earlier, the court listened to the audiotape of the hearing and can confirm that Ms. Spirtos can clearly be heard speaking to Mr. Eardley.

9

biased. His conduct may be objectively characterized as an "ordinary effort at courtroom administration." *Liteky v. United States*, 510 U.S. at 555.

The fact that Ms. Spirtos expressed her beliefs regarding Judge Ahart's judicial fitness and threatened to lobby against his reappointment as a judge is insufficient to substantiate Debtor's allegations of impartiality. See, e.g., *United States v. Studley*, 783 F.2d 934, 939-940 (9th Cir. 1986) (" A judge is not disqualified by a litigant's suit or threatened suit against him . . ., or by a litigant's intemperate and scurrilous attacks . . ."). In any event, Ms. Spirtos' threat to lobby against the reappointment was an empty one. The deadline for submitting comments to the Ninth Circuit Office of the Executive had long since expired by the time of the hearing and Judge Ahart's fourteen-year reappointment had already been confirmed prior to the April 3 hearing[8]. It is also worth noting that, judging from his reaction (or non-reaction), Judge Ahart appeared to be undaunted by the remarks. In sum, the incident is insufficient to support a finding that a reasonable person would doubt Judge Ahart's continued impartial administration of this case.

### The Judge's Rulings and Conduct in the Case

Debtor argues Judge Ahart is "highly biased" against Debtor and Ms. Spirtos based upon "the history of the case" and the "specific causes for recusal" presented in the Motion. (Motion, page 5, lines 1-11). In particular, Debtor appears to take issue with Judge Ahart's finding that Debtor's claim against the Basil Spirtos bankruptcy estate is an unexempt asset of Debtor's estate and, therefore, subject to the claim of Moreno. Debtor's position is that the claim is in the nature of child and spousal support and that Ms. Spirtos and Debtor alone are entitled to the proceeds of the claim. While Debtor's disagreement with Judge Ahart's rulings may constitute grounds for appeal, it does not establish grounds for disqualification under § 455. Judicial rulings generally do not constitute a valid basis for a bias or partiality motion. *Liteky v. United States*, 510 U.S. at 555.

---

[8] The deadline for submitting comments regarding Judge Ahart's reappointment was June 20, 2001. His reappointment, effective April 4, 2002, was publically announced by the Ninth Circuit on December 21, 2001.

10

Debtor's assertion that Judge Ahart's impartiality is demonstrated by his alleged inability to distinguish the Basil Spirtos bankruptcy case from the instant one suffers from the same evidentiary shortfalls as all the other arguments. In this regard, Debtor refers the court to "two strong published opinions [in Basil Spirtos' case] by the 9th Circuit B.A.P. and the Court of Appeals in which she claims the reasoning of Judge Ahart is immortalized as "clearly erroneous," but provides no citations and no analysis regarding the relevance of the opinions to this argument[9]. (Motion, pages 6-7). Debtor goes on to state, in conclusory fashion, that Judge Ahart "verbally associates the bankruptcy estate of Basil N. Spirtos as one in the same" with Debtor's and, therefore, "cannot and does not remain impartial when making judicial determinations regarding the bankruptcy estate of Thelma V. Spirtos." (Motion, page 7, lines 8-13).

Although Debtor was provided an opportunity to submit additional evidence, no further evidence was submitted in support of this argument. An unsubstantiated assertion of impartiality or bias is insufficient to warrant recusal under § 455. *United States v. Hines*, 696 F.2d 722 729 (10th Cir. 1982). The Motion simply does not state facts sufficient to cause a reasonable person to doubt Judge Ahart's impartiality or to support a finding of personal bias or prejudice against Debtor or Ms. Spirtos. The argument fails for lack of clarity and substantiation.

### *The Judge as a Potential Witness in the Basil Spirtos Bankruptcy Case*

Debtor urges the court to disqualify Judge Ahart on the ground that he will likely be called as a witness in the lawsuit filed by Moreno against the Chapter 7 trustee in the Basil Spirtos case. Although a copy of the complaint is attached to the Motion, the Motion is devoid

---

[9] Through its own preliminary research, the court located two Ninth Circuit published decisions and one BAP involving Basil Spirtos: *In re Spirtos*, 221 F.3d 1079 (9th Cir. 2000) (9th Circuit affirmed Judge Ahart's ruling regarding the continued viability of the Moreno judgment and rejected Debtor's argument that the judgment was void under state law) ; and *In re Spirtos*, 992 F.2d 1004 (9th Cir. 1993) (Court vacated the decisions of the BAP and Judge Ahart and remanded the matter to Judge Ahart for further findings regarding the status of Basil Spirtos' pension plan as property of the estate in light of an intervening Supreme Court ruling). While these do not appear to be the cases to which Debtor refers, the burden is on Debtor to provide the court with the proper citations.

11

of any analysis or explanation that would establish a basis for Judge Ahart providing testimony in a lawsuit alleging improper conduct by the trustee. At the hearing on this matter, Debtor's counsel suggested that Judge Ahart could be called to testify regarding the *res judicata* effect of his approval of the trustee's fee applications, as well as his observations of the trustee's conduct in the case. This argument defies logic. Moreover, speculation by a non-party to a lawsuit as to the possible future litigation strategy of a plaintiff cannot establish partiality or bias.

***The Judge's Continued Administration of the Case Pending a Ruling on the Disqualification Motion***

The court is not persuaded that Judge Ahart's continued participation in the administration of the case is evidence of bias or prejudice against Debtor or Ms. Spirtos. Moreover, although the Motion was re-assigned, the bankruptcy case itself remains with Judge Ahart. The court is unaware of any statute, rule or other authority which would stay Judge Ahart's continued administration of the case pending the outcome of a motion for disqualification and Debtor has cited no such authority. Although Debtor states that "pursuant to the local rules of the central district" all matters are stayed, no specific rule is cited. (Motion, page 2, lines 2-4). Absent such a rule, the Motion should, but does not, set forth grounds for the imposition of a stay, e.g., likelihood of success on appeal, irreparable harm, no substantial harm to others or the public, etc. *See, In re Haas*, 292 B.R. 167, 181 (Bankr.S.D.Ohio. 2003).

***Timeliness of the Motion***

In addition to Debtor's failure to meet her burden of proof with respect to impartiality or bias, the court finds the Motion untimely. The circumstances giving rise to the filing of the Motion either occurred on April 3, 2002 or over the past several years. However, even using the former as the triggering event, Debtor waited eight months to submit the Motion. It is well-established that a motion to recuse a judge under § 455 must be made in a timely manner. *Preston v. United States*, 923 F.2d 731, 732-733 (9th Cir. 1991); *Molina v. Rison*, 886 F.2d 1124, 1131 (9th Cir. 1989).

12

In *Preston*, the Ninth Circuit observed that the absence of a timeliness requirement would result in "increased instances of wasted judicial time and resources," as well as a "heightened risk that litigants would use recusal motions for strategic purposes." 923 F.2d at 733. Accordingly, the Court concluded that while there is no *per se* ruling setting a specific time frame, a recusal motion should be filed with "reasonable promptness after the ground for such motion is ascertained." *Id. See also, Datagate, Inc. v. Hewlett- Packard Co.*, 941 F.2d 864, 871-72 (9th Cir. 1991) (motion for recusal filed six weeks after learning of circumstances predicating bias was untimely), cert. denied, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *United States v. Int'l Bhd. of Teamsters*, 814 F.Supp. 1165, 1172 (S.D.N.Y. 1993) (motion filed two months after discovery of relevant facts was deemed untimely); *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 183 (2d Cir. 1991) (a motion to recuse is timely if it is filed at the "earliest possible moment" following discovery of the facts establishing possible bias); *In re Fraschilla*, 235 B.R. 449, 459 (9th Cir. BAP 1999) ("One who waits to raise an impartiality issue until after adverse decisions are announced undermines the weight that will be ascribed to the evidence of bias or prejudice").

The Second Circuit has established a four-part test for determining the timeliness of a motion under § 455 which this court believes is consistent with Ninth Circuit case law and instructive in its determination of timeliness in the instant case:

1. whether the movant has participated in a substantial manner in court proceedings;
2. whether granting the motion would represent a waste of judicial resources;
3. whether the motion was made after the entry of judgment; and
4. whether the movant can demonstrate good cause for delay.

*United States v. Brinkworth*, 68 F.3d 633, 639 (2d Cir. 1995).

First, there is no question that Debtor has substantially participated in proceedings in this case, including the April 3 hearing. Second, this case has been pending for over nineteen years and for more than a decade before Judge Ahart. As evidenced by the court docket, the case

13

1 remains extremely active. Granting the Motion at this juncture would undoubtedly cause substantial delay in the orderly administration of the case. Another judge would have to expend extraordinary time and resources becoming familiar with a case that has been pending for nearly two decades. Third, the Motion was filed after the April 3, 2002 hearing in which Judge Ahart granted the relief (the distribution of funds from the Basil Spirtos estate to Debtor's estate) which constitutes one of the primary grounds for this request for disqualification. Fourth, the record is silent as to why Debtor waited eight months to file the Motion. Consequently, the Motion is untimely.

## ORDER

For all of the reasons stated above, the Motion to Disqualify Hon. Alan Ahart, U.S. Bankruptcy Judge is denied[10].

Date: August 27, 2003

_____
Erithe A. Smith
United States Bankruptcy Judge

---

[10] This memorandum constitutes findings of fact and conclusions of law within the meaning of Rule 7052 of the Federal Rules of Bankruptcy Procedure.

14

# CERTIFICATE OF MAILING

I hereby certify that copies of the **MEMORANDUM OF DECISION AND ORDER REGARDING DEBTOR'S MOTION TO DISQUALIFY HONORABLE ALAN AHART** was mailed on _8/28/03_, 2003 to the parties listed below:

Jon Eardley, Eq.
16020 Puesta Del Sol
Whittier, CA

David Ray, Esq.
Saltzburg, Ray & Bergman
12121 Wilshire Blvd, Suite 600
Los Angeles, CA 90025

Damon G. Saltzburg
Saltzburg, Ray & Bergman
12121 Wilshire Blvd, Suite 600
Los Angeles, CA 90025

Honorable Alan Ahart
United States Bankruptcy Judge
United States Bankruptcy Court
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

Office of the United States Trustee
725 South Figueroa Street, 26th Fl.
Los Angeles, CA 90017

15